THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY D. FOWLER, Defendant-Appellant.

Third District    No. 80-409

Opinion filed July 14, 1981.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

Timothy Fowler, defendant, appeals his conviction for reckless homicide and driving while under the influence of intoxicating liquor following a jury trial in McDonough County. Defendant was sentenced to two years in prison on the reckless homicide verdict. On the intoxicated driving count a concurrent 364-day prison term was imposed. We affirm.

This tragedy began on June 22, 1979, at 10:30 p.m. when defendant, John Simpson, and Kurt McSperritt bought a bottle of Schnapps in Macomb. They proceeded to a party in Colchester where alcoholic beverages were served and consumed. At about 11:20 p.m. the trio left the party. At this point Fowler was "staggering a bit" and experienced difficulty in engaging his car's transmission. Nonetheless, he said he was "okay

to drive," and he headed east on Route 136 toward Macomb. He passed a westbound police car at 70 miles per hour. The police stopped, turned, and followed. A liquor bottle and a beer bottle were ejected from the Fowler vehicle. Fowler passed a pickup truck at 80 to 90 miles per hour. Then he passed an auto on the right shoulder area of the road at a high rate of speed. Finally, the Fowler vehicle smashed into a vehicle travelling in the westbound lane. Two hours later, Gina Boncela died of injuries she sustained in that crash.

Six issues are presented for review: (1) whether the intoxicated driving conviction must be reversed because of insufficient evidence; (2) whether defendant was denied a fair trial due to prejudicial publicity; (3) whether defendant was denied a fair trial because of his trial counsel's incompetence, and the remarks and actions of the prosecutor and the trial judge; (4) whether error occurred in the admission of certain photographs; (5) whether the reckless homicide sentence was incorrectly imposed; (6) whether such sentence was excessive.

■■ The failure of the People to present scientific evidence is not, as Fowler contends, a fatal flaw to his intoxicated driving conviction. A number of witnesses testified that Fowler was intoxicated at the scene of the collision. Arresting Officers Jon and Michael Carson said he smelled of alcohol, was staggering, and slurred his speech. At the Colchester party, off-duty Officer Butterfield testified that in his opinion Fowler was drunk at the party. Also, the erratic way Fowler operated his vehicle tended to indicate that he was intoxicated at the time of the crash.

A conviction for intoxicated driving may be sustained where the sole evidence of intoxication is the arresting officer's testimony. (*People v. German* (1974), 22 Ill. App. 3d 389, 391.) The testimony of the People's witnesses was consistent, believable, and essentially unrebutted. To the extent of any conflict, it was the function of the jury, not the trial court or this court, to resolve it. Such evidence was more than adequate to prove guilt beyond a reasonable doubt.

During the trial, Fowler's attorney furnished the court a copy of an editorial which appeared in the Peoria Journal Star. Because the article advocated more punitive sentences for drunk drivers than existing penalties, the defendant argued the article was prejudicial. He asked the jury be polled as to whether they had read the article. After reading the article the trial court refused this request.

■■■ Every newspaper feature which touches on aspects of an ongoing trial does not mandate interrogation of the jury as to the article's possible prejudice. The crucial inquiry is the analysis of the content of the publicity and its potential prejudicial effect. Such a resolution is the trial judge's responsibility. Here, he concluded, the article's focus on sentencing drunk drivers had no prejudicial impact since the jury would not

sentence the defendant. Moreover, we note, the story did not refer to the defendant or the cause specifically, but only a general class of offenders. (*People v. Krueger* (1968), 99 Ill. App. 2d 431, 444.) Since the article was not demonstrably prejudicial, no reason existed to poll the jury and, therefore, denying defendant's motion was correct.

During opening statements defense counsel's remarks were objected to on four different occasions due to their argumentative nature. Defense counsel was admonished by the court in front of the jury because he continued to present his opening statement in such a fashion. Defense counsel objected to this limitation contending his opening statement was proper. Fowler now contends that defense counsel's conduct at this stage of the trial was incompetent and thereby denied him the effective assistance of counsel. We disagree.

■■ To establish ineffective assistance of counsel, a defendant must show his counsel was actually incompetent in performing duties, and substantial prejudice resulted from such incompetency which would have caused a different outcome. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21.) Consideration of trial tactics or strategy which are matters of professional judgment cannot support a claim of incompetence. In the instant case the People's opening statement painted a convincing scenario of evidence which, if believed, showed the defendant's guilt. Perhaps defense counsel felt obligated to resist the innuendo this statement created. Furthermore, in his argument to the court, outside the jury's presence, he consistently adhered to his position that his opening statement was proper and the court had improperly limited its scope. Although he was wrong as to this conclusion, this does not mean he was incompetent. In any event, we fail to see how any substantial prejudice accrued to the defendant because of this exchange on the initial day of the trial. Also, the trial court's admonition of defense counsel was proper, even in front of the jury, because of defense counsel's continuing argumentative oratory. Lastly, defense counsel's conduct, even if corrected, would not cause a different result in the event of a new trial.

■■ The defendant contends the prosecutor's comments that defense counsel was "making speeches," as well as remarks made in closing argument were prejudicial. The People claim these issues have been waived. We agree.

Although the defendant objected to the prosecutor's comment during trial, he failed to include such alleged error in his post-trial motion. This is equally true as to any claimed prejudicial remarks in the People's closing argument. Accordingly, since not properly preserved for review, all such issues are waived. *People v. Edwards* (1978), 74 Ill. 2d 1.

■■ Next, the defendant maintains the admission of certain aerial photographs of the collision site was improper. This is not so. The admission of

photographic evidence rests with the discretion of the trial court and should not be overturned absent an abuse of discretion. The challenged photographs portrayed the site under changed conditions 10 months later. Neither remoteness in time, nor changed conditions, render such pictures inadmissible. This is especially true, as in the case at bar, since trial testimony of Officer Carson adequately explained to the jury changes in those conditions as they related to the actual depiction of the scene at the time of the crime. Under such circumstances the photographs would not mislead the jury and therefore they were admissible.

Finally, defendant raises two objections to the sentences imposed. Defendant cites (*People v. Conover* (1981), 84 Ill. 2d 400) to support his claim the trial court considered an improper sentencing factor. Since causing serious bodily harm to a victim is implicit in every reckless homicide, defendant urges, such a factor cannot be employed as a statutory aggravating factor (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2) to increase the length of his sentence. He claims it was so used, and since the record does not explain how much weight the trial judge accorded it in reaching the sentence imposed, a remand for sentencing is urged. Alternatively, the sentence is alleged to be excessive. We reject both arguments.

What did the trial judge say at the sentencing hearing? We set it forth here verbatim:

> "BY THE COURT: Mr. Fowler, I've had occasion I guess in the last three years to preside at some six reckless homicide trials. I've heard the evidence in your case. I have to say to you in all fairness and honesty that the circumstances of your driving in this case were by far the most serious of all of those that I've heard.
>
> I've considered the factors in mitigation, some 12 in number, that are required to be considered by me in determining your sentence to be imposed in this case. Of the 12 factors to be considered I can find that there are none applicable to your situation. I reviewed them. I can find no factor here in mitigation.
>
> In aggravation there are some 9 factors to be considered by the Court. Only 4 or 5 could possibly be applicable in your situation. Of the 4 or 5 that would be applicable to your case, there are only two not present. In aggravation I must find that in committing a felony here you did inflict serious bodily injury to another; that you do have a history here of some activity with traffic offenses, not serious perhaps but over a span of some, since 1974, you've had your share of difficulty. And having considered the evidence here of your driving on the occasion in question there is a very high rate of speed involved, a noisy car, and some driving that was just incredible. Everything that you've done with respect to your

driving charges since 1974 seems to have been present on that evening.

A sentence here is necessary to deter others from committing the same or similar offense. The presumption of probation here is overcome. In deference to Dr. Farrar, the Department of Corrections does have medical facilities for the treatment, conditions, although yours is not a medical one based upon his testimony.

Mr. Fowler, be the judgment and sentence of this Court with respect to the charge of reckless homicide that you be and hereby are sentenced to the Department of Corrections for a term of two years. With respect to the charge of driving while under the influence of intoxicating liquor, be the judgment and sentence of this Court that you be and hereby are sentenced to the Department of Corrections for a term of one year. Those sentences to run concurrent with one another."

■■ Sentencing decisions are largely within the discretion of the trial court and will not be disturbed absent an abuse of discretion. Serious bodily injury is always a component of a reckless homicide. Recognizing this, we believe the record adequately supports the sentence imposed, even if the infliction of serious bodily harm should not be a consideration as a statutory aggravating factor. The record indicates the defendant had various and continuing traffic violations leading up to this incident. Such violations were germane to his responsible operation of an automobile. The trial judge noted this history, as well as Fowler's aberrant driving, as adverse factors. Even in view of his youth, the sentence of two years' imprisonment was less than the maximum. It was properly imposed based on the record, and not excessive.

We conclude the defendant received a fair trial. The evidence justified both verdicts and the sentences were proper. Accordingly, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.