THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER J. MUNDAY, Defendant-Appellant.

Second District    No. 84—0285

Opinion filed July 23, 1985.—Rehearing denied August 21, 1985.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After a bench trial defendant, Christopher Munday, was convicted of residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3) and sentenced to a term of four years' imprisonment. He appeals, contending (1) the residential burglary conviction should be vacated as defendant was placed in double jeopardy when retried on that charge after, in an earlier trial, a jury returned legally inconsistent verdicts of not guilty of attempted rape and guilty of residential burglary; (2) the residential burglary statute is unconstitutional; and (3) the degree of the offense should be reduced to burglary as the mandatory four-year minimum sentence for residential burglary is unduly harsh as applied to defendant.

Defendant had initially been charged by information with the of-

fenses of attempted rape, home invasion, attempted robbery and residential burglary; all of these charges emanated from defendant's early morning entry into the apartment of a woman with whom he was not acquainted. In a jury trial held in May 1983, defendant's motion for directed verdicts of not guilty of attempted robbery and home invasion were granted. During its deliberation on the remaining residential burglary and attempted rape charges, the jury sent a note to the trial court asking, "why is residential burglary tied with intent to rape?" The court responded in writing, "a person commits the offense of residential burglary when he, without authority, knowingly enters a dwelling of another with intent to commit therein any felony offense. Rape is a felony offense." In its instructions to the jury, the court had also informed it that for the offense of residential burglary the State was required to prove that when defendant entered the apartment, he did so with the intent to rape. It was also instructed that for the offense of attempted rape, the State must prove defendant, with the intent to commit rape, took a substantial step towards commission of rape. After deliberations in this first trial, the jury returned verdicts finding defendant guilty of residential burglary and not guilty of attempted rape.

In his post-trial motion following the first trial, defendant alleged the verdicts were legally inconsistent as the residential burglary verdict of guilty required a finding defendant entered with intent to rape and the attempted rape verdict of acquittal represented a finding defendant did not have that intent. The trial court granted defendant's motion and ordered a new trial of the residential burglary charge. Defendant thereupon waived his right to trial by jury and the matter was heard in a bench trial.

The evidence at both trials was essentially the same. Lara Garwood, age 23 years, testified she had returned to her apartment on the fifth floor of her building at 12:30 a.m. on July 23, 1982, and soon went to bed. She closed the front door, which had an automatic lock, but did not lock the dead bolt. Complainant was later awakened by someone straddling her back and holding her hands down; he tried to stuff a rag or washcloth in her mouth. The girl struggled with the man and when she attempted to see his face he pushed her face into the pillow. Complainant reached for the telephone and dialed 911, screaming her name and address; the man remained sitting on her trying to hold her down. When she asked what he wanted he said sex, not her money. As she feared he would kill her, complainant told him she would cooperate; she saw his face at this point and identified defendant in trial.

Defendant allowed the girl to sit up and, according to complainant, locked the bedroom door, removed her T-shirt and began kissing her. She testified she ran to the door, but he caught her and ripped off her underpants in the struggle. Defendant told her he would kill her if she did not cooperate, they struggled further and she again reached the telephone and dialed the operator. Defendant jumped upon her, threw the telephone aside and tried to unzip his trousers.

At this point, complainant kneed defendant in the groin and pounded his head against the wall. When she choked him he offered to leave then broke free and ran from the apartment with the girl in pursuit, she screaming for help and he pulling up his trousers as he ran. The parties stipulated a witness, if called, would testify hearing someone call for help that early morning and seeing a man without a shirt running outside of the apartment building.

The next day a letter, established as written by defendant, was pushed under the complainant's door. He there apologized for his conduct, stating he had taken angel dust or PCP that night believing it to be cocaine. As a result, according to the letter, defendant did not know what he was doing in the apartment. He also telephoned the girl and apologized, saying he had not intended anything to happen.

In both trials defendant testified he had been drinking beer and playing cards the afternoon of July 22 and his roommate had told defendant he had heard there was a girl in another building of the apartment complex who was promiscuous and pointed out her apartment. Defendant testified he met two men later that evening with whom he exchanged beer for what defendant believed to be cocaine, but later realized it was another drug. Defendant admitted in trial entering the complainant's apartment, but stated he intended to have consensual sex with her and did not intend to rape her. He denied removing the girl's T-shirt and testified she first asked if defendant wanted sex; when he said that he did, she grabbed the telephone and screamed her name and address before defendant took it away from her. When she ran for the door he caught her and her underpants were torn off while stopping the girl from leaving. She then attacked him, and when he was able to break away, defendant ran from the building. Defendant did not recall getting on top of the girl and denied trying to unzip his trousers; he stated he was not completely aware of what occurred in the apartment.

After this second trial before the court, defendant was convicted of residential burglary and appeals, suggesting the errors earlier noted.

## I

We consider first whether the residential burglary conviction was legally inconsistent with defendant's acquittal of attempted rape in the first trial, thus requiring reversal of his conviction on retrial on grounds of double jeopardy.

■ Two verdicts are legally inconsistent where they necessarily involve a conclusion that the same essential element or elements of each offense were found both to exist and not to exist. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 194-95, 478 N.E.2d 335.) Where the two legally inconsistent verdicts are not guilty and guilty, a retrial of the offense for which the defendant was convicted is barred by the principle of collateral estoppel. (*People v. Frias* (1983), 99 Ill. 2d 193, 204, 457 N.E.2d 1233.) Collateral estoppel, which is part of the fifth amendment's guarantee against double jeopardy, bars relitigation of an issue of ultimate fact which has already been determined by a valid and final judgment. *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 445, 25 L. Ed. 2d 469, 475, 476, 90 S. Ct. 1189, 1194, 1195.

Defendant argues the not-guilty verdict for attempted rape in the first trial was necessarily based on a finding by the jury that he had no intent to commit rape, which, he argues, is legally inconsistent with the necessary finding of an entry with intent to commit rape in its verdict of guilty of the offense of residential burglary so charged. Defendant, as he must for this claim, agrees that the evidence was sufficient to prove he took a substantial step towards commission of a rape. The State, on the other hand, argues the reason for the acquittal is not clear, and offers two alternate possible bases for that verdict: the jury could have found defendant had the requisite intent when he entered the apartment, but abandoned it once inside, if it accepted defendant's testimony and concluded the complainant had indicated a willingness to engage in consensual sex; or, the jury could have found defendant had not taken a substantial step toward commission of a rape.

■ A defendant who seeks application of collateral estoppel carries the burden of demonstrating that the issue he seeks to foreclose from consideration was "necessarily" resolved in his favor in the first proceeding. (*United States v. Castro* (7th Cir. 1980), 629 F.2d 456, 465.) The reviewing court must examine the record to determine whether a rational jury "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." (*People v. Frias* (1983), 99 Ill. 2d 193, 203, 457 N.E.2d 1233.) Where an offense consists of several elements, a mere verdict of acquittal does not inform as to the basis for the jury's decision, and

the record must demonstrate that the verdict could not have been rendered without deciding the question at issue. *People v. Ward* (1978), 72 Ill. 2d 379, 383, 381 N.E.2d 256.

We have reviewed the evidence presented at defendant's first trial and conclude it was sufficient to establish he had an intent to commit rape both when he entered the apartment and while inside, and also sufficient to prove that he took a substantial step towards commission of rape. (See *People v. Maffioli* (1950), 406 Ill. 315, 320, 94 N.E.2d 191; *People v. Hornbuckle* (1972), 7 Ill. App. 3d 328, 331, 287 N.E.2d 294.) The State cites *People v. Clerk* (1979), 68 Ill. App. 3d 1021, 386 N.E.2d 630, *cert. denied* (1979), 444 U.S. 981, 62 L. Ed. 2d 408, 100 S. Ct. 484, in support of its theory the jury could have acquitted defendant of attempted rape because it found he had not taken a substantial step. In *Clerk*, defendant was convicted of burglary with intent to commit rape, but was acquitted of attempted rape, and he argued on appeal that the verdicts were inconsistent. The evidence showed defendant unlawfully entered the complainant's home, placed a knife to her throat, and ordered her to lie down as he stood unzipping his pants before he fled upon hearing a noise. The court held that the evidence proved an intent to commit rape, but not a substantial step towards its commission. 68 Ill. App. 3d 1021, 1029.

We decline to accept the State's argument based on *Clerk*, as the evidence was sufficient to prove defendant guilty of attempted rape, and we do not believe the jury's acquittal resulted from a finding that one or both of these elements were not established; in light of the clear evidence in support of a conviction, the explanation must lie somewhere else. It is possible the jury was confused whether it could return guilty verdicts for both offenses, tied as they were to a similar element of intent; the record provides some support for this, as the jury during deliberations sent a note to the court asking why the two offenses were related. Confusion of the jury can explain problems with verdicts for related offenses. (See *People v. Hoffer* (1985), 106 Ill. 2d 186, 200, 478 N.E.2d 335.) Also, it is possible the verdicts were a compromise of some sort by the jury; although such verdicts are disfavored and can constitute error (see *Svetanoff v. Kramer* (1979), 80 Ill. App. 3d 575, 400 N.E.2d 1), they do nevertheless occur. Finally, in light of defendant's testimony regarding his intentions that night, his youth, lack of a prior criminal record and evidence of his possible drug use, the jury could have acquitted him of one offense as an exercise of lenity. See *People v. Barnard* (1984), 104 Ill. 2d 218, 227, 470 N.E.2d 1005.

■ We do not know, and need not decide, which of these possible

explanations is correct; the fact remains that defendant has not carried his burden to demonstrate the acquittal was necessarily based on a finding he had no intent to commit rape. As defendant has thus not demonstrated a legal inconsistency of the verdicts, collateral estoppel cannot be applied and his retrial for residential burglary was proper.

## II

■ Defendant next contends the residential burglary statute (Ill. Stat. 1983, ch. 38, pars. 1005—5—3(c)(2)(G), 1005—8—1(a)(4)) are unmandatory four-year minimum sentence for that offense (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(2)(G), 1005—8—1(a)(4)) are unconstitutional. He relies upon the memorandum opinion of a judge of the circuit court in Du Page County which found the statute unconstitutionally ambiguous and the applicable sentencing scheme disproportionate to the seriousness of the offense. That decision is presently pending in the Illinois Supreme Court (People v. Dorsano (No. 60349, appeal docketed June 25, 1984)) and has been there consolidated with two similar cases. People v. Bales (No. 60347, appeal docketed June 25, 1984); People v. Buckley (No. 60348, appeal docketed June 25, 1984).

The issues raised by those cases have previously been resolved by this court in favor of constitutionality, both as to the residential burglary itself and the sentencing scheme enacted by the legislature. (People v. Sturlic (1985), 130 Ill. App. 3d 120, 126-28, 129-30, 474 N.E.2d 1.) We adhere to that decision and reject defendant's argument.

■ Finally, defendant requests that we reduce the degree of the offense to burglary and remand for a new sentencing hearing, arguing the mandatory four-year sentence imposed was unduly harsh as applied to him. He notes his youthful age of 18, his lack of a prior criminal record and trauma as a child due to his parents' divorce. Defendant does not, however, urge that the degree of the offense should be reduced because of any evidentiary weakness in his conviction for residential burglary. It is apparent the trial court, although it denied defendant's post-trial request to hold unconstitutional the statutes mandating a four-year minimum sentence, was troubled by that required sentence in light of defendant's background.

It is settled that a reviewing court under Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)) can only reduce the degree of the offense for which a defendant was convicted where it finds some weakness in the evidence of that offense, and it cannot do so merely out of "merciful benevolence." (People v. Mau (1980), 88 Ill. App. 3d 924,

925, 411 N.E.2d 323; see also *People v. Baes* (1981), 94 Ill. App. 3d 741, 419 N.E.2d 47; *People v. Bartlett* (1980), 91 Ill. App. 3d 138, 414 N.E.2d 253, *appeal denied* (1981), 83 Ill. 2d 571.) There is no evidentiary weakness apparent in the residential burglary conviction upon which to reduce defendant's conviction to burglary; he fails to assert any such deficiency, and we decline to do so.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

REINHARD and STROUSE, JJ., concur.